# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RODERICK LAFAYETTE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 11-CV-462-GKF-TLW |
| | ) | |
| JERRY CHRISMAN, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner Roderick Lafayette, a state inmate appearing pro se. Respondent filed a response (Dkt. # 10) and provided copies of the state record for use by the Court in this habeas action. See Dkt. ## 12, 13. Petitioner did not file a reply. For the reasons discussed below, the petition for writ of habeas corpus is denied.

### *BACKGROUND*

On May 17, 2008, D.B. invited two friends, T.C. and T., to her new house for a sleepover. (Dkt. # 12-1, Tr. Vol. II at 259-261). D.B., age 9, lived with S.B., her younger brother; Monica Brown, her mother; and Petitioner, her mother's fiancé. Id. Monica's brother, Steven Brown, was visiting from Texas at that time. (Dkt. # 12, Tr. Vol. I at 171). After dinner, the girls played late into the night and went to sleep sometime between 2:00 a.m. and 3:00 a.m. on a pallet of blankets in D.B.'s room. (Dkt. # 12-1, Tr. Vol. II at 241, 264). Petitioner and Steven were not home at the

---

[1] Petitioner is currently incarcerated at Mack Alford Correction Center in Stringtown, Oklahoma. Accordingly, the proper defendant is Jerry Chrisman, Warden. See Rule 2, Rules Governing Section 2254 Cases. For that reason, the Court Clerk shall be directed to substitute Jerry Chrisman, Warden, in place of the State of Oklahoma as party respondent in this matter.

time and Monica went to bed around midnight in her room, which shared a wall with D.B.'s room. (Dkt. # 12, Tr. Vol. I. at 155-56).

T.C. woke up after feeling someone rubbing her "butt," outside of her underwear. (Dkt. # 12-1, Tr. Vol. II at 243). She told the person to stop. The man asked if she wanted to be a grown-up. Id. T.C. said no. Id. at 243. The man asked why and T.C. responded, "because." Id. The man kept rubbing her "butt," but eventually stopped. Id. at 245. The man then stepped over her and sat down next to D.B. T.C. heard D.B say "stop" and "no." Id. at 246. D.B. testified that she woke up when she felt something rubbing against her skin. Id. at 268. She testified that the man touched her "private part" and later identified it as her vaginal area. Id. at 265-66. The man asked her if she wanted to be "grown" and she said "no." Id. at 269. The man kept rubbing and started kissing D.B. on her face. He told D.B., "don't tell your mom." Id.

Both girls started screaming and D.B. turned on the lights in the room. Id. at 247, 271. When the lights came on, T.C. testified that Petitioner was in the room and said, "don't tell your mom." Id. at 248. D.B. testified that she only saw the back of the man's head and she thought he was Petitioner, but part of her thought it was her "Uncle Steve."[2] Id. at 272-73. D.B. and T.C. continued to scream while the man went out through the window. Id. at 271, 276. The girls tried, but could not open the bedroom door. Id. at 248-49, 277. Monica woke up when she heard the girls scream and also could not open the door to D.B.'s room because it was locked and she did not have the key. (Dkt. # 12, Tr. Vol. I at 158-60). Petitioner "appeared" and Monica asked him to help get

---

[2]Prior to trial, D.B. consistently said the man in the room that night was Petitioner. Her trial testimony marked the first time she expressed any hesitation or uncertainty as to the identity of the man. See Dkt. # 12-1, Tr. Vol. II at 274-77, 286-90. At trial, Monica testified that Petitioner and her brother Steven looked so much alike that people made fun of her for dating her brother. (Dkt. # 12, Tr. Vol. I at 172-73).

the door open. Id. at 161. Petitioner busted the door open. Id. T.C. and D.B. immediately ran to Monica and wrapped their arms around her legs. Id. D.B. said, "[Petitioner] just raped me." Id. Monica put all three girls and S.B. into her bedroom, kicked Petitioner out of the house, and called 911. Id. at 161-64. When police arrived, Petitioner was standing in the front yard, "acting nervous" and told police he did not live at the house and did not know what was going on inside. Id. at 147.

Based on those events, Petitioner was charged in Tulsa County District Court, Case No. CF-2008-2444, with two counts of Lewd Molestation.[3] On June 3, 2009, a jury convicted Petitioner of both counts. (Dkt. # 12-1, Tr. Vol. II at 355-56). The jury recommended sentences of thirty-five (35) years imprisonment and a $5,000 fine on Count I, and twenty-five (25) years imprisonment and a $5,000 fine on Count II. Id. The trial judge sentenced Petitioner in accordance with the jury's recommendation and ordered the sentences to run concurrently. (Dkt. # 10-3). Petitioner was represented at trial by attorneys J. Brian Rayl and Megan Henson.

Petitioner, represented by attorney Richard Couch, perfected an appeal to the Oklahoma Court of Criminal Appeals (OCCA). On appeal, Petitioner raised two (2) propositions of error, as follows:

| | |
|---|---|
| Proposition One: | The trial court erred in not adding [T.C.] to the inconsistent statement jury instruction. |
| Proposition Two: | Prosecutorial misconduct during closing argument deprived Appellant of a fair trial. |

(Dkt. # 10-1). In an unpublished Summary Opinion, filed September 30, 2010, in Case No. F-2009-582, the OCCA affirmed Petitioner's Judgment and Sentence. (Dkt. # 10-3).

---

[3]After the preliminary hearing, the State filed an amended Information adding Count III, Rape by Instrumentation. On June 2, 2009, the first day of the trial, the State dismissed Count III.

On July 25, 2011, Petitioner commenced this habeas corpus action. (Dkt. # 1). In his petition, Petitioner identifies the same two grounds for relief he raised on direct appeal. Respondent argues that the first ground for relief is not cognizable on habeas review and that the OCCA's decision on the second ground is not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. (Dkt. # 10).

*ANALYSIS*

**A.  Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must decide whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. at 510. Petitioner fairly presented the substance of his claims to the OCCA on direct appeal. Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied as to the claims raised in the petition.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B.  Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court

4

applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011).

In this case, the OCCA adjudicated both of Petitioner's claims on direct appeal. Therefore, the Court shall review Petitioner's claims under 28 U.S.C. § 2254(d).

### 1. Jury instruction error (Ground I)

In Ground I, Petitioner claims the trial court erred when it failed to add T.C. "to the inconsistent statement jury instruction." (Dkt. # 1). Petitioner argues the court should have included T.C. "as a witness who had previously made a statement inconsistent with her trial testimony." Id. On direct appeal, Petitioner argued that T.C.'s trial testimony differed from her forensic interview on the issue of whether the bedroom door was open when the girls went to sleep that night. (Dkt. # 10-1 at 5). At trial, she testified the door was open a little, while in her forensic interview, she stated that the door was closed. Id. The OCCA reviewed the claim for plain error and denied relief, citing Sanchez v. State, 223 P.3d 980, 1011 (Okla. Crim. App. 2009), and finding that "[t]he failure to instruct the jury regarding T.C.'s inconsistent statements did not amount to plain error as the error did not go to the foundation of the case or deprive Appellant a right essential to his defense." (Dkt. # 10-3 at 2). In response to the petition, Respondent argues the claim is not cognizable in a federal habeas action. (Dkt. # 10 at 4).

5

Jury instructions are matters of state law and federal habeas relief is not permitted for state law errors. See Rose v. Hodges, 423 U.S. 19, 22 (1975); Patton v. Mullin, 425 F.3d 788, 807 (10th Cir. 2005); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state court determinations on state law questions). It is well established that "errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). The burden on a petitioner attacking a state court judgment based on an omission or an incomplete jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" Maes, 46 F.3d at 984 (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

Jury Instruction No. 14 stated that "[e]vidence has been presented that on some prior occasion D.B. made a statement inconsistent with her testimony in this case." (Dkt. # 10-4). The instruction went on to state that this was impeachment evidence and such evidence cannot be considered "as proof of innocence or guilt." Id. The jury could consider this evidence "only to the extent that you determine it affects the believability of the witness, if at all." Id. Notably, Petitioner's trial counsel did not request T.C. be added to the jury instruction nor did he object to Instruction No. 14. Furthermore, the trial judge provided guidance to the jury, in Jury Instruction

No. 15, on determining credibility of witnesses and directed the jurors to consider, among other things, "the ability of the witness to remember and relate past occurrences, the means of observation, and the opportunity of knowing the matters about which the witness has testified." (Dkt. # 10-5). This instruction, combined with the jury's observation of defense counsel's cross-examination of T.C. about her inconsistent statements regarding the door, see Dkt. # 12-1, Tr. Vol. II at 256-57, gave the jury the opportunity to consider T.C.'s inconsistent statements during deliberations. Petitioner does not identify, nor does the Court find, anything in the record that precluded the jury from evaluating T.C.'s credibility and weighing the entirety of her testimony. Petitioner has failed to establish that he was denied a fair trial as a result of the challenged jury instruction. He is not entitled to habeas corpus relief on Ground I.

  2.  **Prosecutorial misconduct (Ground II)**

In Ground II, Petitioner claims "[p]rosecutorial misconduct during closing argument deprived [him] of a fair trial." (Dkt. # 1). On direct appeal, Petitioner cited several remarks and argued "the combined effect of these comments was so prejudicial to [Petitioner] that he was denied a fair and impartial trial." (Dkt. # 10-1 at 8). The OCCA found that the cumulative effect of the comments did not deprive the defendant of a fair trial and "[m]ost of the comments were within the wide latitude given the parties to discuss evidence and make reasonable inferences from such evidence; the argument did not amount to grossly improper comments affecting the defendant's right to a fundamentally fair trial." (Dkt. # 10-3). Respondent argues that Petitioner was not deprived of a fundamentally fair trial and the OCCA's decision "was not contrary to or an unreasonable application of Supreme Court law." (Dkt. # 10 at 7).

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998). In other words, "absent the infringement of a specific constitutional right, prosecutorial misconduct can result in constitutional error if it 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" DeRosa v. Workman, 679 F.3d 1196, 1222 (10th Cir. 2012) (quoting Donnelly, 416 U.S. at 643). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006).

To determine whether a trial is rendered fundamentally unfair, the Court examines the entire proceeding, "including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase," as well as "[a]ny cautionary steps – such as instructions to the jury – offered by the court to counteract improper remarks." Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002). Though counsel's failure to object is not dispositive, it is "relevant to the fundamental fairness assessment." Id. Additionally, in cases where the state court adjudicated the claim on the merits, this Court applies AEDPA's deferential standard of review. See 28 U.S.C. § 2254(d); Le, 311 F.3d at 1013. "To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." Fero v.

Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

### a. Comments attacking defense counsel

In his claim of prosecutorial misconduct raised on direct appeal, Petitioner first alleged that the prosecutor "improperly accused defense counsel of trying to mislead the jury." (Dkt. # 10-1 at 6). During the State's closing argument, the prosecutor stated, "[w]hy did they present the issue in this way? For the desired effect. The smoke, the chaff, the misdirection. And how did they present it? Surprise." (Dkt. # 12-1, Tr. Vol. II at 320). A few moments later, the prosecutor stated, "they've had 13 months to work up a scenario and a defense." Id. The trial court overruled defense counsel's objection. Id. at 321. Petitioner also complained that, during the State's rebuttal argument, the prosecutor continued attacking the defense when he said, "one of the things that shocks me more than anything is the level of manipulation, lies and surprise attacks that has come from this table. . . . Don't get caught up in all these scare tactics and all these tricks." Id. at 336-37. In short, Petitioner claimed the prosecutor improperly attacked defense counsel.

"Attacks on defense counsel can at times constitute prosecutorial misconduct." Wilson v. Sirmons, 536 F.3d 1064, 1119 (10th Cir. 2008) (citing United States v. Young, 470 U.S. 1, 9 (1985) (counsel "must not be permitted to make unfounded and inflammatory attacks on the opposing advocate")). "'The prosecutor is expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel.'" Wilson, 536 F.3d at 1119 (quoting United States v. Bennett, 75 F.3d 40, 46 (1st Cir. 1996)). Here, the prosecutor's statements suggested to the jury that defense counsel intended to deceive the jury by using a strategy of "misdirection," "manipulation," and "surprise attacks." While these statements do not clearly attack

9

defense counsel's personal character or integrity, they are arguably disparaging. See Wilson, 536 F.3d at 1118-19 (finding that asking a prospective juror during voir dire if he would "'let a smoke screen' fool him, implying that it was defense counsel's job to trick the jury" was "arguably disparaging to defense counsel and suggested defense counsel intended to be untruthful," but did not warrant relief); United States v. Procopio, 88 F.3d 21, 32 (1st Cir. 1996) (finding prosecutor's statements that "defense arguments were 'illusions . . . a smoke screen aimed at creating . . . an illusion to . . . deflect you from the single thread of truth'" were excessive disparagement, but when taken as a whole, did not merit reversal).

Nevertheless, the prosecutor's comments during closing argument were reasonable inferences based on the evidence and testimony presented at trial, especially in light of unexpected alterations[4] in the testimony by two of the State's witnesses. The State presented no physical

---

[4]During her trial testimony, D.B. for the first time hesitated concerning the identity of the man who touched her vaginal area. See supra note 2. As to Monica's testimony, it is not clear from the record whether Monica actually changed her testimony or added new information that tended to suggest that it was her brother, Steve, and not Petitioner, who was in D.B.'s room that night. At trial, during cross-examination, defense counsel asked Monica if she had any reason to believe or if she knew that her brother Steve might be a child molester. (Dkt. # 12, Tr. Vol. I at 175). The trial court sustained the State's objection. On re-direct, the prosecutor asked if Monica was "divulging [things] today . . . that [she] never disclosed before to the State of Oklahoma." Id. at 189. Monica responded "[n]o," that she had discussed the information about her brother, Steve, with "the D.A.'s Office" at the beginning of the case. Id. The prosecutor then asked,

> Q: You're a pretty intelligent woman, aren't you, ma'am?
>
> A: I would hope so.
>
> Q: Because quite frankly, some of what you're doing is pretty sophisticated, isn't it?
>
> A: I don't understand what you mean.
>
> Q: But you do because hadn't we talked about this very situation yesterday?

10

evidence linking Petitioner to the scene and relied heavily on the testimony of Monica, T.C., and D.B. Thus, the strength of the State's case was diminished when D.B., and to some extent, Monica unexpectedly altered their testimony at trial. Furthermore, the comments during the State's rebuttal argument were in direct response to defense counsel's closing argument, after defense counsel suggested that the prosecutors on the case were surprised because they had been assigned to the case for such a short period of time and because there was a lack of investigation. See Dkt. # 12-1, Tr. Vol. II at 328-335. Defense counsel also stated that Monica had been talking about her brother Steve for "13 months" and that Steve's name came up that night in the investigation. Id. at 328-29. After considering the prosecutor's comments in context of the entire trial, the Court finds the arguably disparaging comments did not deprive Petitioner of a fair trial and do not warrant habeas relief. See Darden, 477 U.S. at 179; United States v. Young, 470 U.S. 1, 12–13 (1985) ("if the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction").

---

    A:       What situation are you referring to?

    Q:       What's happening here, today, right now, with you on the stand.

    A:       Again, I don't understand.

    Q:       Where you're starting to thread stuff you've never told us before into your testimony.

Id. at 190-91. This exchange demonstrates the State's position that Monica's testimony at trial was inconsistent with her previous statements and preliminary hearing testimony. Monica also stated that she was still in love with Petitioner and wanted him back in her life if acquitted. Id. at 192-93.
    On re-cross, Monica testified that she sought out and called Petitioner's defense counsel to tell him "this stuff" about her brother, Steve. Id. at 194. Monica also testified on re-cross that "[e]very time [she] met with the D.A.'s Office, [she] told them" about her brother. Id. at 196.

### b. Comments evoking sympathy for D.B.

On direct appeal, Petitioner also complained that the prosecutor improperly evoked sympathy for D.B. (Dkt. # 10-1 at 7). The prosecutor told the jury,

> [A]s angry and frustrated as the State gets when they see what happened with [D.B.] on the stand, really, though, your heart breaks a little bit, doesn't it, to see that poor girl up there, having to live with her mom who's still in love with the defendant, who wants him back in the household.
> Imagine what last night was like, what today's going to be like or tomorrow or the next day in that household. That girl having to live with what she had to do today, but more importantly after she leaves here, after she leaves the blanket and security of this courtroom, she goes back home to mom.

(Dkt. # 12-1, Tr. Vol. II at 321-22). The OCCA found that "[m]ost of the comments were within the wide latitude given the parties to discuss evidence and make reasonable inferences from such evidence," but did not identify which comments may have been out of bounds. See Dkt. # 10-3 at 2. Ultimately, however, the OCCA found relief was not warranted. Id.

"It is a hallmark of a fair and civilized justice system that verdicts be based on reason, not emotion, revenge, or even sympathy." Le, 311 F.3d at 1015. Here, there is no evidence that the jury based its verdict on anything but reason. While the prosecutor's comments, standing alone, arguably evoke sympathy, when viewed in context, the comments are reasonable inferences drawn from the evidence presented at trial. See Hooper v. Mullin, 314 F.3d 1162, 1172 (10th Cir. 2005). The day before D.B. testified, her mother took the stand and admitted she was still in love with Petitioner and wanted him back in her life if acquitted. When D.B. testified, she stated, for the first time, that she was no longer sure if it was Petitioner in the room because his head was turned and "part of the time I thought it was my Uncle Steve and then part of the time I thought it was [Petitioner]." (Dkt. # 12-1, Tr. Vol. II at 273). Immediately preceding the prosecutor's challenged comments regarding D.B.'s testimony, the prosecutor discussed the jury instruction about "eyewitness identification" and

credibility. Id. at 321. Immediately following the challenged comments, the prosecutor discussed the likelihood that D.B., a ten-year-old witness, was nervous and scared and the dilemma she likely faced after her mother testified the day before. Id. at 322. Petitioner has failed to demonstrate that the prosecutor's comments deprived him of a fair trial. Therefore, applying AEDPA deference, the Court finds the OCCA's decision was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Habeas relief is not warranted.

### c. Comments reflecting prosecutor's personal opinion

Finally, Petitioner complained on direct appeal that the prosecutor "improperly gave his personal opinion." (Dkt. # 10-1 at 7). During the State's rebuttal argument, the prosecutor discussed D.B.'s testimony and said, "you saw me turn, I'm sure, not because I was angry at her, not because I was frustrated with her, but because I was on fire at her mom. I couldn't believe what was coming out of her mouth. Nothing I'd ever heard before, nothing the State had ever heard before." (Dkt. # 12-1, Tr. Vol. II at 343). While discussing D.B. and T.C., the prosecutor referred to T.C. and stated, "I would take a hundred cases every day to have a witness like her. Bright, smart, she sat on that witness stand head up, face forward, hardest thing she's ever done in her life." Id. at 343-44. In addition, Petitioner complained that the prosecutor improperly told the jury,

> [h]ave some backbone. Do what's right. Tell this man it's not right to touch a nine-year-old girl's bottom on her underwear . . . . You tell him it's not right to put your gnarly hand, as she said, into my panties and touch my vagina if I'm a nine year old. . . . [W]e're prosecutors[,] . . . we cannot walk back there and mark that guilty box like this guy deserves. That's up to you.

See id. at 347.

"A prosecutor may not express his personal opinion or place his own integrity and credibility at issue." United States v. Jones, 468 F.3d 704, 708 (10th Cir. 2006). However, the use of personal

13

pronouns, like "I" and "we" is not "a per se due process violation." Id. (citation omitted). Moreover, a prosecutor's comments cannot be taken in isolation and must be considered in the full context of the trial. Fero, 39 F.3d at 1474. Here, when viewed in light of the testimony presented at Petitioner's trial, the prosecutor's comments were reasonable inferences from the testimony. First, the jury observed the prosecutor conduct an intense direct and re-direct examination of D.B. after she changed her testimony during direct examination. Next, the jury was also able to compare and contrast the demeanor of D.B. with that of T.C. during their respective testimonies. The prosecutor's comments served to remind them of the differences.

Petitioner's final challenge is to comments made during rebuttal argument when the prosecutor asked the jury to "[d]o what's right . . . . mark that guilty box like this guy deserves." (Dkt. # 12-1, Tr. Vol. II at 347). While it is improper for a prosecutor to express his personal belief that a defendant is guilty, it is necessary to look at the entire context of the trial to determine whether such a comment deprived a defendant of a fair trial. United States v. McAleer, 221 F.3d 1353 (10th Cir. 2000) (unpublished).[5] To warrant habeas relief, a petitioner "must demonstrate persistent and pronounced misconduct or that the evidence was so insubstantial that absent the remarks, a conviction probably would not have occurred." Hernandez v. Parker, 524 F. App'x 401, 407-08 (10th Cir. 2013) (unpublished). Here, Petitioner fails to make that showing. Therefore, applying AEDPA deference, the Court finds the OCCA's decision was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Habeas relief is not warranted.

---

[5]This and all other unpublished opinions are not precedential but are cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

In summary, after reviewing the record and the trial transcripts, the Court concludes that the OCCA's determination that the prosecutor's comments "did not amount to grossly improper comments affecting the defendant's right to a fundamentally fair trial," see Dkt. # 10-3 at 2, is entitled to AEDPA deference. Petitioner failed to offer any evidence or argument demonstrating that the OCCA's decision was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Habeas corpus relief on Ground II is denied.

## C.     Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. See Dockins, 374 F.3d 935. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

*CONCLUSION*

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Court Clerk shall substitute Jerry Chrisman, Warden, in place of the State of Oklahoma as party respondent in this matter.

2. The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate judgment shall be entered in this matter.

**DATED** this 18th day of June, 2014.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT